IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| AUTUMN K. BROWN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:12-CV-1196-N |
| | § | |
| LIBERTY MUTUAL GROUP INC., | § | |
| | § | |
| Defendant. | § | |

## ORDER

This Order addresses Defendant Liberty Mutual Group Inc.'s ("Liberty Mutual")
motion for summary judgment [Doc. 16] ("Liberty Mutual Mot."). For the following
reasons, the Court grants the motion.

### I. THE EMPLOYMENT DISPUTE

This dispute arises from Plaintiff Autumn K. Brown's resignation from her insurance
sales position with Liberty Mutual in April 2011. Brown began working for Liberty Mutual
on October 18, 2004, as a sales representative. Brown performed well and became a lead
sales representative. As a lead sales representative, Brown received the assistance of a sales
associate, though this benefit was contingent on Brown satisfying certain sales goals.

On January 11, 2011, Brown notified her supervisor, Lynn Peters, of her pregnancy.
Peters responded that she had never worked with a pregnant person before and that it would
be a new experience for her. Soon thereafter, Peters began questioning Brown's
performance. Peters also informed Brown that she had to meet her sales expectations or she

would lose the assistance of the sales associate.  After Brown missed work due to a pregnancy-related health concern, Peters suggested that she take family medical leave under the Family Medical Leave Act ("FMLA").  Brown declined to take leave at that time.

During the first week of January 2011, an auditor, unaware of Brown's pregnancy, selected Brown for an audit of her insurance sales.  The auditor uncovered some inconsistencies between information provided by the account holders and the information entered by Brown.  On February 14, 2011, Peters and two other managers asked to meet with Brown to discuss the audit.  Brown became overwhelmed and left the meeting.  The next day, Brown and her supervisors continued the meeting.  Brown did not receive any disciplinary action as a result of the audit, nor did she institute a complaint regarding the meeting.

On February 18, 2011, Brown traveled to South Africa for vacation.  After she returned from her trip, she requested and received short-term disability and medical leave. On April 15, 2011, before the end of her medical leave, Brown notified Liberty Mutual that she resigned her position.

Approximately one year after resigning, Brown filed the instant suit, alleging that Liberty Mutual discriminated against her due to her pregnancy, interfered with her rights under the Family Medical Leave Act, and retaliated against her.  Brown claims that she was constructively discharged from her position when she resigned.  Liberty Mutual now moves for summary judgment on Brown's claims.

## II. STANDARD FOR SUMMARY JUDGMENT

A trial court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In making this determination, a court must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The moving party bears the initial burden of informing the court of the basis for its belief that there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When a party bears the burden of proof on an issue, "he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis omitted). When the nonmovant bears the burden of proof, the movant may demonstrate entitlement to summary judgment either by (1) submitting evidence that negates the existence of an essential element of the nonmovant's claim or affirmative defense, or (2) arguing that there is no evidence to support an essential element of the nonmovant's claim or affirmative defense. *Celotex*, 477 U.S. at 322–25.

Once the movant has made this showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact so that a reasonable jury might return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Moreover, "conclusory allegations, speculation, and unsubstantiated

assertions" will not satisfy the nonmovant's burden. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc) *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1). Indeed, factual controversies are resolved in favor of the nonmoving party "only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999) (citing *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995)).

### III. LIBERTY MUTUAL IS ENTITLED TO SUMMARY JUDGMENT

In her amended complaint, Brown alleges that Liberty Mutual discriminated against her and interfered with her FMLA leave because of her pregnancy "by increasing [Brown's] performance standards upon the discovery that [Brown] was pregnant," conducting a surprise audit, and "ultimately causing a constructive termination of [Brown]." *See* Am. Compl. ¶¶ 4.01–4.07. Brown asserts claims for discrimination based on pregnancy, harassment, and hostile work environment; violations of the FMLA; and retaliation. Because Brown cannot show that she suffered any adverse employment action or that she was denied leave under the FMLA, she cannot state a prima facie case for any of her claims. The Court holds that Liberty Mutual is entitled to summary judgment on all claims.

### A. *Brown's Discrimination Claim Fails*

The *McDonnell Douglas* burden-shifting framework governs claims for discrimination based on pregnancy under Title VII. *See Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219 (5th Cir. 2001). First, a plaintiff must establish a prima facie claim for discrimination by

ORDER – PAGE 4

showing that (1) she is a member of a protected class; (2) she was qualified for the position at issue; (3) she was the subject of an adverse employment action; and (4) she was treated less favorably because of her membership in that protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances. *See Wesley v. Gen. Drivers, Warehousemen & Helpers Local 745*, 660 F.3d 211, 213 (5th Cir. 2011) (citing *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009)); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Second, if the plaintiff is successful, the burden of production – but not the burden of proof – shifts to the defendant, which must proffer a legitimate, nondiscriminatory reason for the challenged employment action. *Lee*, 574 F.3d at 259 & n.13 (5th Cir. 2009) (citing *McDonnell Douglas*, 411 U.S. at 802). Third, if the defendant articulates a legitimate, nondiscriminatory reason, the plaintiff must show that (1) the defendant's reason is not true, but is instead a pretext for discrimination; or (2) the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic. *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 341 (5th Cir. 2005) (quoting *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004)).

As part of Brown's prima facie case for discrimination, she must show that she was the subject of an adverse employment action. Though Brown voluntarily resigned, a resignation may still constitute an adverse employment action "if the resignation qualifies as a constructive discharge." *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001). "To prove a constructive discharge, a plaintiff must establish that working conditions were

so intolerable that a reasonable employee would feel compelled to resign." *Id.* (internal quotation marks omitted). Thus, the standard for constructive discharge is objective rather than subjective.

Brown fails to show that she was constructively discharged and thus cannot state a prima facie case for pregnancy discrimination. Brown argues that Peters's negative performance reviews and threats to take away the assistance of a sales associate, which would affect her compensation, constituted a constructive discharge by forcing her to resign. *See* Pl.'s Resp. to Liberty Mutual Mot. [36] ("Resp.") 22. Generally, negative work reviews and even disciplinary actions are not sufficient to support constructive termination. *See, e.g.*, *Cardenas-Garcia v. Texas Tech Univ.*, 118 F. App'x 793, 793 (5th Cir. 2004) (unpub. and per curiam) ("Plaintiffs allege that poor performance reviews and disciplinary investigations constitute adverse employment actions. Under our jurisprudence, an adverse employment action means an ultimate employment decision, such as hiring, granting leave, discharging, promoting and compensating. Performance reviews and investigations, therefore, do not qualify as ultimate employment actions." (citation omitted)); *Shawgo v. Spradlin*, 701 F.2d 470, 481–82 (5th Cir. 1983) (derogatory comments following disciplinary proceedings insufficient to show constructive discharge); *Junior v. Texaco, Inc.*, 688 F.2d 377, 379–80 (5th Cir. 1982) (finding that a negative work review without threat of dismissal was not constructive termination), *abrogated on other grounds by Carroll v. Gen. Acc. Ins. Co. of Am.*, 891 F.2d 1174 (5th Cir. 1990). Here, Brown's employers emphasized her need to satisfy certain sales goals and questioned her after an audit but never disciplined her or threatened

to terminate her employment. Thus, the uncontested facts do not support the conclusion that Liberty Mutual constructively discharged her. Because Brown cannot show that she suffered an adverse employment action, Liberty Mutual is entitled to summary judgment on this claim.

### B. Brown's Hostile Work Environment Claim Fails

To establish a hostile work environment claim under Title VII, a plaintiff must prove that (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment complained of was based on her pregnancy; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action. *See Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012) (quoting *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002) *cert. denied*, 133 S. Ct. 136 (2012)). A plaintiff does not need to prove the last element if the harasser was a supervisor with authority over the plaintiff. *See Garcia v. Garland Indep. Sch. Dist.*, 2013 WL 5299264, at *3 (N.D. Tex. 2013) (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998)).

Harassment affects a term, condition, or privilege of employment only if it is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Ramsey*, 286 F.3d at 268 (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993)). The harassment "must be both objectively and subjectively offensive . . . such that a reasonable person would find it to be hostile or abusive." *E.E.O.C. v. WC&M Enters., Inc.*, 496 F.3d 393, 399–400 (5th Cir. 2007). Courts must consider "the frequency of the discriminatory conduct; its severity; whether it is

physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Walker v. Thompson*, 214 F.3d 615, 625 (5th Cir. 2000) (quoting *Harris*, 510 U.S. at 23). The "mere utterance of an . . . epithet which engenders offensive feelings in a[n] employee" does not sufficiently affect the conditions of employment to implicate Title VII." *Harris*, 510 U.S. at 21 (internal citation omitted).

In this case, Brown cannot show that the harassment she suffered was sufficiently severe or pervasive to alter the conditions of her employment. Brown's allegations of harassment focus on comments regarding her sales numbers, threats of penalties if Brown did not meet her sales requirements, and the meeting following the audit. *See* Resp. 26–27. Brown does not allege that Peters or any other employees of Liberty Mutual made any derogatory comments regarding her pregnancy, other than Peters's initial observation that she had not had a pregnant employee before Brown. *See id.* at 6. Job-related criticisms and increased job demands, particularly where the employer took no disciplinary action, are not the same as sex- or pregnancy-based remarks that give rise to hostile work environment claims. *Avina v. JP Morgan Chase Bank, N.A.*, 2010 WL 3505161, at *8 (S.D. Tex. 2010) (citing *Kang v. Bd. of Supervisors of La. State Univ.*, 75 F. App'x 974, 976–77 (5th Cir. 2003) (unpub. and per curiam)); *see also Watts v. Kroger Co.*, 170 F.3d 505, 510 (5th Cir. 1999) (holding that neither changing a work schedule nor expanding job duties creates a hostile work environment). The Court concludes that Brown has not raised a fact issue regarding whether she was subject to harassment or that the alleged harassment was "because of" her

pregnancy.  Because Brown cannot establish a prima facie case for harassment, Liberty Mutual is entitled to summary judgment on this claim.

### C.  Brown's FMLA Claim Fails

The FMLA provides two theories of recovery: (1) the entitlement or prescriptive theory, which creates substantive rights for employees eligible for FMLA coverage, and (2) the retaliation or proscriptive theory, which prohibits employers from retaliating against employees who exercise their FMLA rights.  *See Mauder v. Metro. Transit Auth. of Harris County*, 446 F.3d 574, 580 (5th Cir. 2006); *see also* 29 U.S.C. § 2612(a)(1) (setting forth entitlement to FMLA leave); *id.* § 2614(a) (providing for restoration to original or equivalent position);  *id.* § 2615(a) (prohibiting employer's interference with employee's exercise of FMLA rights).  To present an entitlement claim under the FMLA, a plaintiff must show that (1) she is an eligible employee under the FMLA; (2) the defendant is an employer subject to the requirements of the FMLA; (3) the plaintiff was entitled to leave under the FMLA; (4) the plaintiff gave proper notice to the defendant of her intention to take FMLA leave; and (5) the defendant denied her or interfered with the benefits to which she was entitled under the FMLA.  *See Richardson v. Monitronics Int'l, Inc.*, 2004 WL 287730, at *2 (N.D. Tex. 2004) (Godbey, J.) (citing *Lubke v. City of Arlington*, 2003 WL 2246200, at *6 (N.D. Tex. 2003) (Means, J.); *Parker v. Hahnemann Univ. Hosp.*, 234 F. Supp. 2d 478, 483 (D.N.J. 2002)).  Though the FMLA does not specifically define "interference," "Department of Labor regulations provide that interference with the exercise of an employee's rights includes not only refusing to authorize FMLA leave, but discouraging an employee from using such

leave." *Arismendiz v. Univ. of Texas at El Paso*, 536 F. Supp. 2d 710, 715 (W.D. Tex. 2008) (citing 29 C.F.R. § 825.220(b), (c); *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1050 (8th Cir. 2006); *Potenza v. City of New York*, 365 F.3d 165, 167 (2d Cir. 2004)).

The parties do not dispute that Brown was an eligible employee; that Liberty Mutual is an employer subject to the FMLA; that Brown was entitled to leave due to a pregnancy-related health condition; or that Brown gave proper notice to Liberty Mutual of her intent to take leave. *See* Liberty Mutual Mot. 25–26; Resp. 29–30. Thus, the sole issue before the Court is whether Liberty Mutual interfered with any of Brown's substantive rights under the FMLA.

Brown has shown no evidence to support her claim that Liberty Mutual interfered with or denied her benefits under the FMLA. To the contrary, the uncontested facts show that Liberty Mutual granted all FMLA leave requested by Brown and that her supervisors actually encouraged her to use FMLA leave. *See* Liberty Mutual Mot. 5–6, 8–9; Resp. 10, 14–15. Brown resigned from her position before her FMLA leave expired. *See* Liberty Mutual Mot. 9; Resp. 15. There is generally no FMLA injury where a plaintiff receives all leave requested. *See Arismendiz*, 536 F. Supp. 2d at 716 (citing *De La Garza-Crooks v. AT&T*, 2001 WL 361099, at *1 (5th Cir. 2001) (unpub.)).

To the extent Brown argues that Liberty Mutual violated the FMLA by constructively discharging and preventing her from taking future FMLA leave, *see* Am. Compl. ¶ 5.02, her claim also fails. At the time Brown resigned, she had not given notice of her intent to take any future leave, a required element in an FMLA claim. *See Richardson*, 2004 WL 287730,

ORDER – PAGE 10

at *2.  Further, Brown voluntarily resigned her position; Liberty Mutual did not constructively

discharge Brown to prevent her from requesting additional leave.  *See supra* Section III.A.

Accordingly, Brown cannot show that Liberty Mutual interfered with her rights under the

FMLA.  The Court grants Liberty Mutual summary judgment as to Brown's FMLA claim.[1]

### D.  *Brown's Retaliation Claim Fails*

As with discrimination claims, the *McDonnell Douglas* burden-shifting framework

governs retaliation claims.  A plaintiff establishes a prima facie retaliation case by showing

that (1) she engaged in a protected activity, (2) an adverse employment action occurred, and

(3) there was a causal link between the protected activity and the adverse employment action.

*Taylor v. United States Parcel Serv., Inc.*, 554 F.3d 510, 523 (5th Cir. 2008).  If the plaintiff

is successful in presenting a prima facie case, the burden of production shifts to the employer

to articulate a legitimate, nonretaliatory reason for the adverse employment action.  *Long v.*

*Eastfield Coll.*, 88 F.3d 300, 304–05 (5th Cir. 1996).  If the defendant proffers such a reason,

"the fact-finder must decide whether retaliation was a but-for cause for the employer's

---

[1]In her amended complaint, Brown appears to assert only the entitlement theory of recovery under the FMLA and not the retaliation theory.  *See* Am. Compl. ¶¶ 5.01–5.04. Brown brings her retaliation claim pursuant to Title VII, not the FMLA.  *See id.* ¶ 6.02.  To the extent Brown intends to assert a claim for retaliation under the FMLA, she fails to do so because she cannot show that she suffered an adverse employment decision for the reasons discussed *infra* Section III.D.  *See Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 768 (5th Cir. 2001) ("To make a prima facie showing of retaliation under the FMLA, Hunt must show that: (1) she was protected under the FMLA; (2) she suffered an adverse employment decision; and either (3a) that she was treated less favorably than an employee who had not requested leave under the FMLA; or (3b) the adverse decision was made because she took FMLA leave."); *McArdle v. Dell Prods.*, L.P., 293 F. App'x 331, 337 (5th Cir. 2008) (unpub. and per curiam) (applying *Burlington Northern* to FMLA retaliation claims).

action." *Hernandez*, 670 F.3d at 657 (quoting *Long*, 88 F.3d at 305 n.4). This means that a "plaintiff may avoid summary judgment on 'but for' causation by demonstrating 'a conflict in substantial evidence on this ultimate issue.'" *Id.* at 660 (quoting *Long*, 88 F.3d at 308).

Brown cannot show that she suffered an adverse employment action and thus cannot support a prima facie case for retaliation. Title VII's antiretaliation provision contemplates a broader range of adverse employment actions than does its discrimination provision. *See Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006). To support a retaliation claim, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means [the adverse action] well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* (quotation marks omitted). For example, the Supreme Court has found that reassignment of a worker from a specialized duty to standard labor and a brief suspension constituted adverse employment actions in the context of a retaliation claim. *Id.* at 69.

While supervisors at Liberty Mutual emphasized the importance of meeting sales goals, audited Brown's accounts, and met with Brown to discuss the results of the audit, Liberty Mutual neither disciplined Brown nor altered her hours, position, or benefits at the company. The Fifth Circuit has found that "verbal counselings" and reprimands do not constitute adverse employment actions where they would not "have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Mendoza v. Bell Helicopter*, 2013 WL 6225181, at *3 (5th Cir. 2013) (unpub. and per curiam) (finding that verbal and written warnings regarding work performance or behavior at work did not constitute adverse

employment actions); *see also Harrison v. Corrections Corp. of Am.*, 476 F. App'x 40, 44–45 (5th Cir. 2012) (unpub. and per curiam) (finding that verbal reprimands and generic bad evaluations were trivial, not material, harms).  Brown had previously met sales goals and undergone an audit at Liberty Mutual without negative consequences.  *See* Liberty Mutual Mot. 23.  In this context, discussions regarding sales expectations and the results of an audit without disciplinary action were not materially adverse and would not dissuade a reasonable employee from reporting unlawful employer conduct.  Because Brown cannot show that she experienced an adverse employment action, she cannot satisfy her burden to show retaliation.  The Court therefore grants summary judgment to Liberty Mutual as to this claim as well.

## CONCLUSION

The Court finds that Liberty Mutual is entitled to summary judgment as to all claims Brown asserts in her amended complaint.  Accordingly, the Court grants Liberty Mutual's motion.

Signed January 21, 2014.

David C. Godbey
United States District Judge

ORDER – PAGE 13